CAMILLE ST. PIERRE *vs.* HATHAWAY BAKING COMPANY.

SAME *vs.* EMMETT R. KELLEY.

NORMAN ST. PIERRE *vs.* HATHAWAY BAKING COMPANY.

SAME *vs.* EMMETT R. KELLEY.

Worcester.   January 6, 1937. — January 25, 1937.

Present: RUGG, C.J., PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Negligence,* Due care of person in charge of child.

A conclusion that a mother exercised due care for the safety of her child, three years and four months of age, was warranted by findings that she justifiably thought he was in a safe position when for about a minute she left him playing on a sand pile at the side of a street little travelled, in front of a motor truck and in full view of its driver, who had stopped to do an errand and who in her absence started the truck and ran over the child.

FOUR ACTIONS OF TORT.  Writs in the Superior Court dated April 25, 1935.

The actions were heard together without a jury by *Whiting,* J., upon reports of an auditor.  There were findings for the plaintiffs in the sums of $956.90, $956.90, $2,500, and $2,500, respectively.  The defendants alleged exceptions.

*W. W. Jump,* for the defendants.

*M. J. Batal,* for the plaintiffs.

PIERCE, J.  These are actions of tort arising out of an automobile accident that occurred on August 25, 1934. The defendant Hathaway Baking Company is the owner of a motor vehicle involved in the accident.   The defendant Emmett R. Kelley was the driver of the motor vehicle which was being used upon the business of the owner.  The plaintiff Norman St. Pierre, who was three years and four months old at the time of the accident, brings his actions by his next friend for personal injuries.  The plaintiff Camille St. Pierre is the father of the minor plaintiff, and brings his actions for consequential damages.  The minor

plaintiff will hereinafter be referred to as the plaintiff. In all the actions the declarations are in one count alleging ordinary negligence, and the defendants' answers contain a general denial and an allegation that the plaintiff was not in the exercise of due care.

The actions were tried before an auditor, whose findings of fact were not final. He furnished the parties with copies of his draft reports, and notified them of the time and place when and where they might attend and suggest such alterations as they might think proper. The parties appeared at the hearing on the draft reports on August 6, 1936. The auditor's final reports were filed on August 13, 1936. No party within ten days after the filing of the reports filed a statement insisting upon a jury trial or reserving the right to introduce further evidence under Rule 88 of the Superior Court (1932).

The cases were heard without a jury, upon the plaintiffs' motions that the auditor's reports "be confirmed, and judgment be entered thereon." No party offered any testimony other than the auditor's reports at the hearing in the Superior Court. The judge found for the plaintiffs on the auditor's reports, and assessed the damages in each action. The defendant in each case excepted to the "ruling and order" of the presiding judge "in allowing the plaintiff's motion."

In substance the issue is, Was the mother, the custodian of the plaintiff, in the exercise of due care of the plaintiff at the time of the injury? We shall consider the actions on this single issue.

The auditor's reports, in substance, disclose the following facts: On August 25, 1934, at about 9:40 A.M., the plaintiff, three years and four months old, resided with his father and mother at 67 Connors Street, Fitchburg, Massachusetts. Connors Street is a dead end street of short length, and very little travel goes over it. The street was of tar and gravel construction, twenty-two feet wide from one edge of the macadam to the other. The surface was smooth and dry. There were no curbs on the sides of the street, though there was an unpaved gutter on each side of it, with a slight rise from the gutter to a dirt sidewalk on each

side. At the time of the accident the family of the plaintiff, and the plaintiff, resided in the last house on the north side of the street at the dead end of it. A few minutes before the accident happened, the plaintiff's mother had taken him to a position a little over a hundred feet easterly from their house on the same side of the street, and had placed him at a sand deposit near 51 Connors Street to play. This sand deposit had been left by a department of the city of Fitchburg which had used the major portion of it in covering the street a short period before the accident, but not on the day of the accident. The deposit was located chiefly on the sidewalk, but some of it extended into the gutter and out into the street a few feet. After placing the plaintiff at the sand deposit, his mother then sat in such a position on the front steps of her home that she could and did watch him with a companion child at play with his sand pail. While the plaintiff's mother was seated watching the plaintiff, the defendant Kelley drove a bread truck up to a point about ten or twelve feet from the children as they played, shut off his motor, and stopped his truck in such a position that its right wheels were up on the sidewalk a foot or so. The plaintiff, sitting down and playing in the sand, was in a direct line with the right front wheel of the truck and about ten or twelve feet away. At that time the plaintiff's mother, from her observation of the situation, believed justifiably, as the auditor found, that her child was in a position of safety. As Kelley drove up the street, and as he stopped the truck, there was nothing to obstruct his view of the playing children and he in fact saw them. Just after the truck was stopped, a friend of the plaintiff's mother drove up to her house in a motor vehicle, having passed the truck. After some conversation with the mother, the friend gave her some flowers, and both went into the house to put the flowers in water. Just before going into the house, the mother and her friend saw the plaintiff at the sand pile, and the mother told him to stay where he was. The mother knew that some residents on the street walked on the macadam because the sidewalk was "dirty and gravelly"; that motor vehicles at times drove onto

the gravel sidewalk; that it was very common for motor vehicles to stop in front of 51 Connors Street with their right wheels on the sidewalk; and that the bread truck came up Connors Street every morning about the same time, delivering bakery products. She saw that the bread truck had stopped in front of 51 Connors Street before the accident and knew that it would be driven away after the driver delivered whatever was ordered. After the mother "went into the house for about a minute," and just as she was coming out of the house, she heard a scream and exclaimed, "My baby," and rushed out of the house and learned that her child had been injured.

The auditor found that the plaintiff's mother acted as a reasonably prudent mother would have acted in all the existing circumstances; that she was not guilty of any negligence contributing to the accident; that no contributory negligence could be attributed to the plaintiff; and that he acted as a normal and ordinary child of his years.

The auditor made no specific findings as to where the plaintiff was or what he was doing at the time of the accident, but it can be fairly implied that he was playing in the sand pile as he had been doing a minute before the accident.

Concerning the defendant Kelley's conduct after the truck was stopped, the auditor found that the truck was stopped before the front steps of the house at 51 Connors Street; that the truck was fifteen feet long; that Kelley got out on the left hand side, went around the back of the truck, up the front steps leading to the house and read a note; that he then went down the steps to the rear of the truck, opened the door and took out bread; that retracing his steps to the front door of the house, he left the bread and returned to the rear of the truck, shut the door, went to the left side, got into the driver's seat, started the engine and drove the truck straight ahead; and that he heard a scream after starting ahead and brought the truck to an immediate stop. The auditor stated that "by the exercise of reasonable care and diligence, the defendant [Kelley] would, could and should have seen the children and have avoided hitting them. Although there was nothing to obstruct his

view of the children as he got into the truck, the defendant did not see them at that time nor after he got into it, and in that respect was negligent."

We are of opinion, on the facts found by the auditor and above set out, that the finding of the auditor that the plaintiff's mother was in the exercise of due care and was not guilty of any negligence contributing to the accident was warranted. Summarized, these facts are that the mother was justified, under the circumstances, in believing that the plaintiff was in a position of safety at the sand pile when she went into the house, in view of the facts that the child, so far as appears, was a normal child of his years, that the truck was stopped ten or twelve feet away from the children, and that there was no obstruction to the view of Kelley and no obstruction on the street as to the use of the street by Kelley, and in view of the legal principle that the plaintiff's mother had a right to rely to some extent on the presumption that Kelley, in operating the truck, would not operate over the sidewalk or run down the child negligently. *Hirrel* v. *Lacey*, 274 Mass. 431, 435. *Wilson* v. *Freeman*, 271 Mass. 438, 440. *Dube* v. *Keogh Storage Co.* 236 Mass. 488.

*Exceptions overruled.*